E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
SAMUEL J. DIAZ (Cal. Bar No. 304503)
JAMES A. SANTIAGO (Cal. Bar No. 300459)
Assistant United States Attorneys
International Narcotics, Money Laundering,
  & Racketeering Section
    1400 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-3045/2229
    Facsimile: (213) 894-0142
    E-mail:   samuel.diaz@usdoj.gov
              james.santiago@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>             Plaintiff,<br><br>             v.<br><br>MOHAMMAD JAWAD ANSARI,<br><br>             Defendant. | No. CR 20-00449-FLA<br><br>GOVERNMENT'S TRIAL MEMORANDUM<br><br>Indictment:      Oct. 6, 2020<br>Pretrial Conf.:  Apr. 14, 2023<br>Trial:           May 2, 2023<br>Last Day:        May 15, 2023<br>Location:        Courtroom of the Hon.<br>                 Aenlle-Rocha |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Samuel J. Diaz and James A. Santiago, hereby files its Trial Memorandum.

///

///

///

This Trial Memorandum is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: April 7, 2023                Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney

MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division


      /s/
SAMUEL J. DIAZ
JAMES A. SANTIAGO
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**TABLE OF CONTENTS**

<u>DESCRIPTION</u>                                                        <u>PAGE</u>

MEMORANDUM OF POINTS AND AUTHORITIES.................................1

I.    INTRODUCTION..................................................1

II.   STATUS OF THE CASE...........................................1

      A.    Indictment.............................................1

      B.    Discovery..............................................1

      C.    Trial..................................................2

      D.    Defendant's Motion to Suppress.........................2

      E.    Pending Motions in Limine..............................3

      F.    Jury Instructions and Verdict Form.....................3

III.  STATEMENT OF FACTS...........................................3

IV.   ELEMENTS OF THE CHARGED OFFENSE..............................5

V.    EVIDENTIARY AND LEGAL ISSUES.................................6

      A.    Recorded Statements by Defendant.......................6

            1.    Foundation.......................................6

            2.    Defendant's Statements Are Admissible Under Rule
                  801(d)(2)(A) Only When Offered by the Government.....7

            3.    Defendant's Statements Are Inadmissible When
                  Offered by Defendant Under Rule 801(d)(2)(A)........9

      B.    Cross-Examination of Defendant........................10

      C.    Character Evidence....................................11

      D.    Evidence of R.S.'s Personal History...................12

      E.    Evidence of R.S.'s Sexual History.....................13

      F.    Transcripts and Photographs...........................13

      G.    Expert Evidence.......................................14

      H.    Reciprocal Discovery..................................14

      I.    Reference to Felony Charge and/or Potential Punishment...15

      J.    Defense Witnesses.....................................17

     K.    Affirmative Defenses....................................18

VI.  CONCLUSION....................................................18

**TABLE OF AUTHORITIES**

**DESCRIPTION**                                                                **PAGE**

Cases

Crampton v. Ohio,
  408 U.S. 941 (1972) ............................................... 10

Crawford v. Washington,
  541 U.S. 36 (2004) ................................................ 8

Davis v. Alaska,
  415 U.S. 308 (1974) .............................................. 12

Hamling v. United States,
  418 U.S. 87 (1974) ............................................... 11

McGautha v. California,
  402 U.S. 183 (1971) .............................................. 10

Michelson v. United States,
  335 U.S. 469 (1948) .............................................. 11

Ohler v. United States,
  529 U.S. 753 (2000) .............................................. 10

Rogers v. United States,
  422 U.S. 35 (1975) ............................................... 16

Taylor v. Illinois,
  484 U.S. 400 (1988) .............................................. 15

United States v. Black,
  767 F.2d 1334 (9th Cir. 1985) ................................... 10

United States v. Blackwood,
  878 F.2d 1200 (9th Cir. 1989) .................................... 6

United States v. Bruce,
  109 F.3d 323 (7th Cir. 1997) .................................... 16

United States v. Bush,

iii

1    58 F.3d 482 (9th Cir. 1995) .......................................... 12

2  United States v. Collicott,

3    92 F.3d 973 (9th Cir. 1996) .......................................... 10

4  United States v. Frank,

5    956 F.2d 872 (9th Cir. 1991) ......................................... 16

6  United States v. Keiser,

7    57 F.3d 847 (9th Cir. 1995) .......................................... 12

8  United States v. Lozoya,

9    982 F.3d 648 (9th Cir. 2020) .......................................... 1

10  United States v. Matta-Ballesteros,

11    71 F.3d 754 (9th Cir. 1995) ........................................... 6

12  United States v. May,

13    622 F.2d 1000 (9th Cir. 1980) ........................................ 14

14  United States v. Mendiola,

15    707 F.3d 735 (7th Cir. 2013) .......................................... 7

16  United States v. Miranda-Uriarte,

17    649 F.2d 1345 (9th Cir. 1981) ........................................ 10

18  United States v. Mohamed,

19    410 F. Supp. 2d 913 (S.D. Cal. 2005) ................................ 12

20  United States v. Nguyen,

21    230 F. App'x 686 (9th Cir. 2007) ...................................... 8

22  United States v. Oaxaca,

23    569 F.2d 518 (9th Cir. 1978) ......................................... 14

24  United States v. Ortega,

25    203 F.3d 675 (9th Cir. 2000) .......................................... 9

26  United States v. Powell,

27    955 F.2d 1206 (9th Cir. 1992) ........................................ 16

28  United States v. Sepulveda,

15 F.3d 1161 (1st Cir. 1993) ................................... 16

United States v. Stearns,

 550 F.2d 1167 (9th Cir. 1977) ................................. 14

United States v. Tolliver,

 454 F.3d 660 (7th Cir. 2006) .................................. 9

United States v. Torres,

 908 F.2d 1417 (9th Cir. 1990) ................................. 7

United States v. Trujillo,

 714 F.2d 102 (11th Cir. 1983) ................................ 16

United States v. Turner,

 528 F.2d 143 (9th Cir. 1975) .......................... 7, 13, 14

United States v. Valerio,

 441 F.3d 837 (9th Cir. 2006) .................................. 8

United States v. Whitman,

 771 F.2d 1348 (9th Cir. 1985) ............................... 7, 8

**Statutes**

18 U.S.C. § 2244(b) .......................................... 1, 5

18 U.S.C. § 2246(3) ............................................. 6

49 U.S.C. § 46506(1) ......................................... 1, 5

**Rules**

Fed. R. Crim. P. 16 ........................................ 14, 15

Fed. R. Evid. 106 ............................................. 10

Fed. R. Evid. 403 ........................................... 9, 11

Fed. R. Evid. 404 ............................................. 11

Fed. R. Evid. 405 ......................................... 11, 12

Fed. R. Evid. 412 ............................................. 13

Fed. R. Evid. 611 ............................................. 12

Fed. R. Evid. 801...............................................7, 9

Fed. R. Evid. 901...............................................6, 7

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Defendant MOHAMMAD JAWAD ANSARI ("defendant") intentionally touched R.S.'s inner thigh without R.S.'s consent as R.S. slept next to him on a United Airlines flight from Cleveland to Los Angeles. After the plane landed, FBI agents conducted a <u>Mirandized</u> and recorded interview of defendant in which he admitted to touching R.S. and told agents that he "misread the body language."

## II.   STATUS OF THE CASE

### A.   Indictment

On October 6, 2020, a federal grand jury returned a single-count Indictment charging defendant with Abusive Sexual Contact in violation of 18 U.S.C. § 2244(b).  Jurisdiction is present pursuant to 49 U.S.C. § 46506(1), which applies certain criminal laws to acts on an aircraft.  See also <u>United States v. Lozoya</u>, 982 F.3d 648, 650 (9th Cir. 2020)(en banc)("[V]enue for in-flight federal offenses is proper in the district where a plane lands[.]")

### B.   Discovery

To date, the government has produced approximately 368 pages of discovery to the defense, including investigation reports, photographs, transcripts, text messages, and audio recordings.  The defense has produced approximately 209 pages of business records reflecting passenger lists and defendant's travel history, transcriptions of defendant's interview, three expert reports, and the curricula vitae for the proposed defense experts.

**C.    Trial**

Trial Date: Trial by jury has not been waived.  Jury trial is scheduled for May 2, 2023 at 8:30 a.m., before the Honorable Fernando L. Aenlle-Rocha.

Estimated Time: The government expects that its case-in-chief (with a reasonable allotment for cross examination) will take one to two days to present.  The government currently anticipates calling five witnesses who are also identified in the government's concurrently filed witness list: (1) Federal Bureau of Investigation Special Agent Caroline Walling; (2) victim "R.S."; (3) passenger Richard J. Rice; (4) United Airlines employee Michele Digiuseppe; and (5) United Airlines employee Reneshia Rivers.  Should defendant testify or offer other witnesses in his defense, the government may call rebuttal witnesses.

Stipulations: At this time, the parties have not agreed to any stipulations of fact.

Defendant:  Defendant is released on bond pending trial.

Meet and Confer:  The parties have met and conferred regarding the government's factual summary of its case in chief, the charge and elements, the length of the government's case-in-chief, and discussed the relevant legal and evidentiary issues which are also identified in the parties' pending motions. (Dkts. 92, 96-98, 127, 129.)  The parties generally agree on these matters and any disagreements are currently reflected in the parties' pending motions in limine.

**D.    Defendant's Motion to Suppress**

Defendant filed a motion to suppress his post-arrest statements to law enforcement. (Dkt. 40.)  On January 12, 2022, the Court denied defendant's motion to suppress, finding that "under the totality of

the circumstances, defendant's statements to law enforcement agents on February 17, 2020, were voluntary." (Dkt. 61.)

### E. Pending Motions in Limine

On October 14, 2022, defendant filed two motions in limine: (1) motion to admit defendant's entire FBI interview; and (2) motion to preclude lay opinion testimony that defendant was "faking" being asleep. (Dkts. 96, 97.)  The same day the government filed two motions in limine: (1) motion to exclude improper reference, testimony, and argument; and (2) motion to exclude defendant's proposed expert witnesses. (Dkts. 92, 98.)  On March 17, 2023, defendant filed his motion to allow remote testimony of out-of-state witnesses. (Dkt. 127.)  On March 31, 2023, defendant filed a motion in limine to suppress defendant's statements. (Dkt. 129.)

### F. Jury Instructions and Verdict Form

The parties filed joint proposed jury instructions, disputed jury instructions, and a joint proposed verdict form on October 14, 2022. (Dkts. 91, 94, 95.)  The government is refiling these documents concurrently with this trial memorandum to reflect the current trial date and this court.

## III. STATEMENT OF FACTS

The government expects that the evidence at trial will establish the following facts, among others:

On February 17, 2020, defendant boarded United Airlines flight #1977 from Cleveland Hopkins International Airport in Ohio to Los Angeles International Airport (LAX) in California.  Defendant occupied window seat 10F, victim R.S. occupied middle seat 10E, and witness Richard J. Rice Jr. occupied aisle seat 10D.  Mr. Rice was the first passenger in that row to arrive, followed by defendant, and

shortly thereafter by R.S.  Because R.S. was tired, she did not talk with the other passengers in her row.

R.S. is an American Airlines flight attendant with approximately 33 years of experience who was traveling on United flight #1977 to work on American Airlines flight #169 from LAX to Narita International Airport in Japan, with a scheduled departure later that day.  In his interview, defendant said he was returning from a weekend trip to Cleveland where he was helping his father with a move.  Defendant further said he did not sleep for two days.

The flight took off at approximately 7:00 a.m. (E.S.T.) and was expected to last approximately 5 hours.  R.S. fell asleep shortly after takeoff.  The armrest separating R.S. and defendant was down.  During the beverage service, defendant ordered a drink.

At some point during the flight to Los Angeles, defendant placed his left hand on R.S.'s right knee and knowingly, and without R.S.'s consent, moved his hand to her inner thigh.  Mr. Rice saw defendant's left hand on R.S.'s right knee.  Approximately 45 minutes to an hour later, Mr. Rice saw that defendant's hand was further up R.S.'s leg and was touching R.S.'s inner thigh.  R.S. woke up and pushed defendant's hand away, said something to the effect of "Dude" to defendant, and her belongings flew up in the air.  Defendant leaned against the window, and according to R.S., pretended to be asleep. R.S. left her seat, went to the aft galley of the aircraft, and informed United Airlines flight attendant Michele Digiuseppe what happened.  Ms. Digiuseppe observed R.S.'s reaction and helped R.S. inform American Airlines that R.S. would not be able to work on her scheduled flight to Japan.  R.S. did not return to her seat for the remainder of the flight.  Ms. Digiuseppe brought Mr. Rice up to first

4

class where he told her what he observed and said he did not do anything to stop defendant because he did not know their relationship since they arrived at their seats close in time and thought they might be together.  Mr. Rice returned to his seat for the remainder of the flight.  Ms. Digiuseppe observed defendant during the remainder of the flight and thought he was pretending to be asleep.

Upon arrival at approximately 9:31 a.m. (P.S.T.), United Airlines personnel escorted defendant off the airplane before the other passengers deplaned.  LAX police officers waited for defendant. FBI Special Agent William Richau, FBI Special Agent Caroline Walling, and Task Force Officer Ellen Kuo, arrived at the terminal to interview defendant and other witnesses.

At the beginning of the interview, Agent Richau advised defendant of his <u>Miranda</u> rights and defendant signed an FBI Advice of Rights Form FD-395, indicating that defendant understood his rights.

The interview lasted approximately two and a half hours, including breaks.  In the audio-recorded interview, defendant said he did not take any sleeping pills or medication before or during the flight and he did not consume any alcohol.  However, he said he did not sleep in the last two days and was sleeping during the flight. Defendant later admitted that he touched R.S.'s leg, made an "error in judgment," "misread the body language," and "misread the cues."

## IV.  ELEMENTS OF THE CHARGED OFFENSE

The elements of 18 U.S.C. § 2244(b), as alleged in the sole count of the Indictment, are: (1) defendant knowingly had sexual contact with R.S.; (2) the sexual contact was without R.S.'s permission; and (3) the offense was committed on an aircraft in the special aircraft jurisdiction of the United States.  <u>See</u> Ninth

Circuit Model Criminal Jury Instruction No. 20.17 (2020 ed.); 49
U.S.C. § 46501(1).

For purposes of this offense, "sexual contact" means the
intentional touching, either directly or through the clothing, of the
inner thigh of any person with an intent to abuse, humiliate, harass,
degrade, or arouse or gratify the sexual desire of any person.  See
18 U.S.C. § 2246(3).

**V.    EVIDENTIARY AND LEGAL ISSUES**

**A.    Recorded Statements by Defendant**

At trial, the government intends to introduce recorded
statements made by defendant during a recorded interview with FBI
agents.

**1.    Foundation**

The foundation that must be laid for the introduction into
evidence of such recordings is a matter largely within the discretion
of the trial court.  There is no rigid set of foundational
requirements.  The Ninth Circuit has held that recordings

> are sufficiently authenticated under Fed. R. Evid. 901(a)
> if "sufficient proof has been introduced so that a
> reasonable juror could find in favor of authenticity or
> identification."  [Citing cases.]  This is done by proving
> a connection between the evidence and the party against
> whom the evidence is admitted, and can be done by both
> direct and circumstantial evidence.

United States v. Matta-Ballesteros, 71 F.3d 754, 768 (9th Cir. 1995),
modified, 98 F.3d 1100 (9th Cir. 1996).  Indeed, Rule 901 requires
only that the United States make "a prima facie showing of
authenticity so that a reasonable juror could find in favor of
authenticity or identification," and the "probative force of the
evidence offered is, ultimately, an issue for the jury."  United

6

States v. Blackwood, 878 F.2d 1200, 1202 (9th Cir. 1989)(citations omitted).

There are many different types of evidence that can establish voice authenticity.  For example, testimony of voice recognition constitutes sufficient authentication for recordings.  Fed. R. Evid. 901(b)(5); United States v. Torres, 908 F.2d 1417, 1425 (9th Cir. 1990) (holding that testimony by law enforcement that he spoke to the defendant and recognized her voice on the recordings was sufficient to authenticate the recordings); United States v. Mendiola, 707 F.3d 735, 740 (7th Cir. 2013) ("The bar for familiarity is not a high one. This court has held that hearing a defendant's voice once during a court proceeding satisfies the minimal familiarity requirement").  So does circumstantial evidence that tends to show the defendant as the speaker.  See, e.g., Fed. R. Evid. 901(b)(6); United States v. Turner, 528 F.2d 143, 163 (9th Cir. 1975) (holding that the speaker's identity on a recording also can be established by circumstantial facts, including identification by name, prior to admission).

The government will introduce witness testimony identifying defendant's voice on the recorded interview.

> 2.   Defendant's Statements Are Admissible Under Rule 801(d)(2)(A) Only When Offered by the Government

At trial, defendant's statements in the recorded interview are admissible as admissions by a party opponent and are not hearsay when offered by the government.  Fed. R. Evid. 801(d)(2)(A).

Statements from other parties on the recordings are also admissible because they are not offered for the truth of the matter asserted; they are instead offered to demonstrate the effect on the listener – defendant – to provide context for defendant's statements

and actions.  In United States v. Whitman, 771 F.2d 1348 (9th Cir.
1985), the Ninth Circuit upheld a district court's admission of an
informant's statements to a defendant that were contained on a
recording of a conversation between defendant and the informant
because "the court did not admit the informant's statements for their
truth but only to show that they were made."  Id. at 1352.  The
informant's statements, the court explained, "were not admitted for
their truth but to enable the jury to understand [the] taped
statements, and the jury was so instructed."  See also United States
v. Valerio, 441 F.3d 837, 839, 844 (9th Cir. 2006) (informant's
statements on a recording are admissible to give context to
defendant's statements "so that the jury could understand what
Valerio was responding to when he spoke"); United States v. Nguyen,
230 F. App'x 686, 690 (9th Cir. 2007) ("[T]he district court did not
err in admitting out-of-court statements of the informant, which were
translated and transcribed for the jury.  The statements were
properly admitted for the non-hearsay purpose of providing context
for [defendant's] recorded statements, and not for truth.").[1]

Admission of these contextual statements does not violate a
defendant's confrontation rights.  In Crawford v. Washington, 541
U.S. 36 (2004), the Supreme Court held that, when the government
offers at trial hearsay evidence in a criminal case that is
"testimonial" in nature, the Confrontation Clause of the Sixth
Amendment requires actual confrontation, i.e., cross-examination.
But this "does not bar the use of testimonial statements for purposes

---

[1] The Court may give a limiting instruction prior to the playing
of recordings instructing the jury that other parties' statements are
not offered for the truth but for context.  See Whitman, 771 F.2d at
1352.

other than establishing the truth of the matter asserted." Id. at
57, n.9. "Statements providing context for other admissible
statements are not hearsay because they are not offered for their
truth. As a result, the admission of such context evidence does not
offend the Confrontation Clause because the declarant is not a
witness against the accused." United States v. Tolliver, 454 F.3d
660, 666 (7th Cir. 2006) (internal citations omitted).

> ### 3.   Defendant's Statements Are Inadmissible When Offered by Defendant Under Rule 801(d)(2)(A)

The government will only be introducing excerpts of the recorded
interview. This decision itself follows from the mandate of Rule 403
excluding even relevant evidence that presents a danger of "undue
delay, wasting time, or needlessly presenting cumulative evidence."
Fed. R. Evid. 403.

Regardless, defendant may not seek to introduce his own recorded
statements at trial under Rule 801(d)(2)(A). Defendant's statements
are admissible only if offered against him -- otherwise, they fall
within the scope of the rule against hearsay. See United States v.
Ortega, 203 F.3d 675, 682 (9th Cir. 2000) (non-self-inculpatory
statements, even if made contemporaneously with other self-
inculpatory statements, are inadmissible hearsay). To permit
otherwise would place a defendant's statements "before the jury
without subjecting himself to cross-examination, precisely what the
hearsay rule forbids." Ortega, 203 F.3d at 682 (district court
properly granted the government's motion in limine to exclude
introducing defendant's post-arrest statements through cross-
examination of government agent).

1    The rule of completeness also does not entitle a defendant to
2    elicit his own inadmissible hearsay statements.  Id. ("Even if the
3    rule of completeness did apply, exclusion of Ortega's exculpatory
4    statements was proper because these statements would still have
5    constituted inadmissible hearsay"); United States v. Collicott, 92
6    F.3d 973, 983 (9th Cir. 1996)(holding that Rule 106 does not compel
7    admission of otherwise inadmissible hearsay evidence).  Thus, if the
8    government plays only a portion of any recordings in this case, the
9    defendant has no automatic right to introduce the remainder of the
10   recording for his own benefit.

11   In its exhibit list, the government has identified the excerpts
12   of the interview it intends to introduce and will supplement that
13   disclosure as needed.

14   **B.   Cross-Examination of Defendant**

15   A defendant who testifies at trial waives his right against
16   self-incrimination and subjects himself to cross-examination
17   concerning all matters reasonably related to the subject matter of
18   his testimony.  See Ohler v. United States, 529 U.S. 753, 759 (2000)
19   ("It has long been held that a defendant who takes the stand in his
20   own behalf cannot then claim the privilege against cross-examination
21   on matters reasonably related to the subject matter of his direct
22   examination")(citing McGautha v. California, 402 U.S. 183, 215
23   (1971), vacated in part on other grounds, Crampton v. Ohio, 408 U.S.
24   941 (1972)).  "A defendant has no right to avoid cross-examination on
25   matters which call into question his claim of innocence."  United
26   States v. Miranda-Uriarte, 649 F.2d 1345, 1354 (9th Cir. 1981).  The
27   government may cross-examine defendant on matters "reasonably related
28   to the subjects covered by the defendant's [direct] testimony," even

if defendant did not discuss the specific matters during his direct testimony.  See United States v. Black, 767 F.2d 1334, 1341 (9th Cir. 1985).

Here, the defense has indicated that defendant may testify as a witness and will therefore be subject to cross-examination.

### C.   Character Evidence

Although defendant has no obligation to present evidence, there is a possibility that he may seek to call character witnesses in his support.  According to defense counsel, defendant may call up to six character witnesses.

The Supreme Court has recognized that character evidence -- particularly cumulative character evidence -- has weak probative value and great potential to result in confusion of the issues and prejudice the jury.  Michelson v. United States, 335 U.S. 469, 480, 486 (1948).  The Court has thus given trial courts wide discretion to limit the presentation of character evidence.  Id. at 486.  Federal Rule of Evidence 403 also "gives the district court broad discretion in excluding cumulative evidence."  See Hamling v. United States, 418 U.S. 87, 127 (1974).

Rule 404(a) of the Federal Rules of Evidence governs the admissibility of character evidence.  Rule 404(a) permits a defendant to introduce evidence only of a "pertinent" trait of character.  If the evidence is admitted, the government may offer evidence to rebut it.  Fed. R. Evid. 404(a)(2)(A).  As a general rule, a character witness called by a defendant may not testify about specific instances of the defendant's conduct that demonstrate a particular character trait; rather, the witness may provide opinion testimony or reputation testimony only.  Fed. R. Evid. 405(a).  A defendant may

not offer evidence of specific instances of defendant's conduct relevant to his character or character trait unless defendant's character or character trait is "an essential element of a charge, claim, or defense."  Fed. R. Evid. 405(b).  A character trait is not "essential" unless "proof, or failure of proof, of the character trait by itself [would] actually satisfy an element of the charge, claim, or defense."  United States v. Keiser, 57 F.3d 847, 856 (9th Cir. 1995).  Thus, a non-pertinent or misleading character trait is not admissible.

On cross-examination of a defendant's character witness, however, the government may inquire into specific instances of defendant's past conduct relevant to the character trait at issue. Fed. R. Evid. 405(a).  In particular, a defendant's character witnesses may be cross-examined about their knowledge of the defendant's prior bad acts.  United States v. Bush, 58 F.3d 482, 488-89 (9th Cir. 1995).

### D.   Evidence of R.S.'s Personal History

A defendant has a constitutional right to confront witnesses against him.  See Davis v. Alaska, 415 U.S. 308, 315 (1974) ("The main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination.").  The Court, however, has the authority to limit the scope of cross-examination. Fed. R. Evid. 611.  Where evidence fails to touch on a witness's ability to be truthful, to recall events, or to show a bias, the Court should exclude it.  United States v. Mohamed, 410 F. Supp. 2d 913, 916-17 (S.D. Cal. 2005).

Here, the government is unaware of anything in R.S.'s personal history that is probative as to her ability to be truthful, her

1   ability to perceive or recall events, or any bias she may have.

2   Defendant should not be permitted to engage in a fishing expedition

3   into R.S.'s personal history, where there is no evidence that

4   anything in R.S.'s past bears any relevance to the events at issue

5   here, namely, whether defendant engaged in abusive sexual contact on

6   an aircraft.

7        **E.   Evidence of R.S.'s Sexual History**

8        To the extent defendant seeks to introduce any evidence of

9   R.S.'s sexual behavior or predisposition, the Court should exclude it

10  as both irrelevant and as a violation of Fed. R. Evid. 412.  Rule 412

11  bars evidence offered to prove the victim's sexual behavior and

12  alleged sexual predisposition.  Id.  The comments further explain

13  that "evidence such as that relating to the alleged victim's mode of

14  dress, speech, or life-style will not be admissible."  Id.

15       **F.   Transcripts and Photographs**

16       The government intends to use at trial transcripts of the

17  recorded interview with defendant.[2]  The transcript will help the

18  jurors understand the evidence in the case.  "It is well recognized

19  that accurate typewritten transcripts of sound recordings, used

20  contemporaneously with the introduction of the recordings into

21  evidence, are admissible to assist the jury in following the

22  recordings while they are being played."  United States v. Turner,

23  528 F.2d 143, 167 (9th Cir. 1975).  Admission of the transcripts is

24  within the Court's discretion.  Id. at 167-68.  "[T]he use of

25  transcripts contemporaneously with the playing of sound recordings

26

27       [2] The government will not seek to admit the transcript as
    evidence; rather, the transcripts will be used solely to aid the
28  jurors while the government plays the recording of defendant's
    statements to law enforcement.

1   often eliminates the necessity of replaying the recordings many

2   times," which will save the Court's time and prevent any undue

3   prejudice to defendant of having to replay the recordings.  Id. at

4   168.  The transcript will speed the jury's understanding of the case.

5       Additionally, the government intends to introduce photographs of

6   the United Airlines airplane where the incident occurred, including

7   photographs of the row where R.S. and defendant sat.  Photographs are

8   generally admissible as evidence.  See United States v. Stearns, 550

9   F.2d 1167, 1171 (9th Cir. 1977)(photographs of crime scene

10  admissible).  Photographs should be admitted so long as they fairly

11  and accurately represent the event or object in question.  United

12  States v. Oaxaca, 569 F.2d 518, 525 (9th Cir. 1978).  Also,

13  "[p]hotographs are admissible as substantive as well as illustrative

14  evidence."  United States v. May, 622 F.2d 1000, 1007 (9th Cir.

15  1980).  These photographs of the airplane will allow the jurors to

16  understand where R.S., defendant, and Richard J. Rice Jr. sat on the

17  airplane when the sexual contact occurred.

18      **G.   Expert Evidence**

19      The government does not plan to offer any expert testimony in

20  its case in chief.  The defense intends to call three experts: Dr.

21  Richard A. Leo, a "false confessions" expert; Dr. Richard Romanoff, a

22  psychologist; and Dr. Rafael Pelayo, a sleep expert.  The

23  admissibility of their testimony is the subject of the Government's

24  motion in limine No. 2.  (Dkt. 98.)

25      **H.   Reciprocal Discovery**

26      The government has complied with its discovery obligations under

27  Rule 16 of the Federal Rules of Criminal Procedure, and continues to

28

do so.  The government has likewise requested all reciprocal

discovery from defendant.

Rule 16 creates certain reciprocal discovery obligations on the

part of defendants to produce three categories of materials that they

intend to introduce as evidence at trial: (1) documents and tangible

objects; (2) reports of any examinations or tests; and (3) expert

witness disclosure.  Rule 16 imposes on defendants a continuing duty

to disclose these categories of materials.  Fed. R. Crim. P.

16(b)(1)(A), (b)(1)(C), and (c).  In those circumstances where a

party fails to produce discovery as required by Rule 16, the rule

empowers the district court to "prohibit that party from introducing

the undisclosed evidence," or "enter any other order that is just

under the circumstances."  Fed. R. Crim. P. 16(d)(2)(C) and (D).

To the extent defendant may attempt to introduce or use any

evidence at trial that he has not produced to the government, such

documents should be excluded.  Pursuant to Rule 16(b)(1)(A),

defendant should be precluded from introducing any documents that

were not produced, in violation of defendant's reciprocal discovery

obligations.  Fed. R. Crim. P. 16(d)(2)("the court may . . . prohibit

that party from introducing the undisclosed evidence"); see also

Taylor v. Illinois, 484 U.S. 400, 415 (1988) (defendant's failure to

comply with, or object to, government's discovery request before

trial justified exclusion of unproduced evidence).

### I.   Reference to Felony Charge and/or Potential Punishment

The charge in this case is a felony, and, if convicted at trial,

defendant faces a potential custodial sentence in federal prison and

mandated registration with the sex offender registry.  Because

potential penalties are not relevant to the issue of defendant's

guilt or innocence, they should not be alluded to, presented to, or disclosed to the jury.  "It has long been the law that it is inappropriate for a jury to consider or be informed of the consequences of their verdict."  United States v. Frank, 956 F.2d 872, 879 (9th Cir. 1991).

Indeed, "it is the practice in the federal courts to instruct juries that they are not to be concerned with the consequences to the defendant of the verdict, except where required by statute."  Id.; see also Rogers v. United States, 422 U.S. 35, 40 (1975)(jury should have been admonished "that the jury had no sentencing function and should reach its verdict without regard to what sentence might be imposed").  The Ninth Circuit Model Jury Instructions accordingly provide the following instruction: "The punishment provided by law for this crime is for the court to decide.  You may not consider punishment in deciding whether the government has proved its case against the defendant beyond a reasonable doubt."  Ninth Cir. Model Crim. Jury Instr. 6.22 (2019 ed.).

This instruction likely will be for naught, however, if defense counsel brings matters of punishment to the jury's attention through questioning, opening and closing arguments, or comments in attorney conducted voir dire.  The only purpose for such comments would be an "attempt[] to serenade [the] jury with the siren song of nullification."  United States v. Sepulveda, 15 F.3d 1161, 1190 (1st Cir. 1993).  Such efforts would be improper, because "[j]ury nullification . . . is to be viewed as an 'aberration under our system.'"  United States v. Bruce, 109 F.3d 323, 327 (7th Cir. 1997); see also United States v. Powell, 955 F.2d 1206, 1213 (9th Cir. 1992) (defense is not entitled to nullification instruction); United States

1  v. Trujillo, 714 F.2d 102, 106 (11th Cir. 1983) ("neither the court
2  nor counsel should encourage jurors to violate their oath [to follow
3  the law]. We therefore join with those courts which hold that
4  defense counsel may not argue jury nullification during closing
5  argument.").

6      Here, the jury's role at trial is limited to determining
7  defendant's guilt or innocence. The jury has no role whatsoever in
8  determining the sentencing consequences of its verdict. Highlighting
9  that the charge is a federal felony or alluding to the potential
10 collateral consequences that defendant may face would only serve to
11 invite the jury to make its decision on an inappropriate ground.
12 Accordingly, defense counsel should be prohibited from making any
13 reference -- during examination of witnesses, argument, or otherwise
14 -- to the potential penalties defendant faces.

15      **J.   Defense Witnesses**

16      In addition to defendant, three experts, and six character
17 witnesses, the defense has indicated it intends to call as witnesses
18 the three law enforcement officers who conducted defendant's
19 interview and nine other passengers on the flight. To the extent
20 defendant elects to call witnesses at trial, the government requests
21 that the Court order defendant to provide an offer of proof with
22 respect to the anticipated testimony of those witnesses so that the
23 Court may assess whether their testimony would be relevant,
24 cumulative, speculative, and/or otherwise admissible.

25      In addition, if defendant does elect to call witnesses at trial,
26 to eliminate the need for the government to request a brief recess
27 after the direct testimony of defense witnesses, the government
28 requests that the Court require defendant to provide any information

17

necessary to collect potential impeachment material, at the outset of the defense case.  The government must be permitted to obtain criminal history information for those witnesses and evaluate any impeachment material provided in order to properly cross examine those witnesses, and the government does not wish to delay the trial and waste the jurors' time by requesting a recess following the direct testimony of each of those witnesses.

### K.   Affirmative Defenses

Defendant has not given notice of any intent to rely on any defense of mental incapacity, mental condition, alibi, or any other affirmative defense.  Therefore, to the extent defendant may attempt to rely on such a defense, the government reserves the right to object and to move to preclude defendant from asserting such a defense.

On October 10, 2022 defendant filed his notice of intent to call experts under Federal Rule of Criminal Procedure 12.2(b).  (Dkt. 89.) This is not a notice of an affirmative defense and the issue is addressed in the government's motion to exclude defendant's proposed expert witnesses.  (Dkt. 98.)

## VI.   CONCLUSION

The government respectfully requests leave to revise this trial memorandum if necessary.