E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
SAMUEL J. DIAZ (Cal. Bar No. 304503)
JAMES A. SANTIAGO (Cal. Bar No. 300459)
Assistant United States Attorneys
International Narcotics, Money Laundering,
  & Racketeering Section
     1400 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-3045/2229
     Facsimile: (213) 894-0142
     E-mail:   samuel.diaz@usdoj.gov
               james.santiago@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 20-449-FLA |
| Plaintiff, | GOVERNMENT'S SENTENCING POSITION REGARDING DEFENDANT MOHAMMAD JAWAD ANSARI; DECLARATION OF SAMUEL J. DIAZ |
| v. | |
| MOHAMMAD JAWAD ANSARI, | |
| Defendant. | Sentencing: Sept. 29, 2023<br>Time:      10:00 a.m.<br>Location:  Courtroom of the<br>           Hon. Fernando L.<br>           Aenlle-Rocha |

     Plaintiff United States of America, by and through its counsel
of record, the United States Attorney for the Central District of
California and Assistant United States Attorneys Samuel J. Diaz and
James A. Santiago, hereby files its Sentencing Position Regarding
Defendant Mohammad Jawad Ansari ("defendant").

//

//

//

This position is based upon the attached memorandum of points and authorities, the supporting declaration of Samuel J. Diaz, the files and records in this case, the Presentence Report (Dkt. 178, "PSR") prepared by the United States Probation and Pretrial Services Office ("USPO") and such further evidence and argument as the Court may wish to consider at the time of sentencing.

Dated: September 15, 2023          Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney

MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division

_____/s/_____
SAMUEL J. DIAZ
JAMES A. SANTIAGO
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**TABLE OF CONTENTS**

DESCRIPTION                                                              PAGE

I.    INTRODUCTION...............................................1

II.   STATEMENT OF FACTS.........................................1

III.  SENTENCING GUIDELINES......................................2

      A.   Defendant's Total Offense Level Is 16................2

           1.   A two-level increase applies under the vulnerable
                victim adjustment.................................3

           2.   A two-level increase applies for obstruction of
                justice..........................................5

           3.   The zero-point offender provision does not apply.....9

      B.   The Applicable Guidelines...........................9

IV.   DEFENDANT'S SENTENCE......................................10

      A.   Defendant Should Be Sentenced To 24 Months'
           Imprisonment........................................10

           1.   Defendant's sexually predatory offense and
                personal characteristics are aggravating...........10

           2.   Defendant's offense was serious and warrants a
                substantial sanction.............................12

      B.   Supervised Release..................................12

      C.   Fine................................................14

      D.   Special Assessments and Restitution.................14

V.    CONCLUSION................................................15

1

## **TABLE OF AUTHORITIES**

2

**FEDERAL CASES**

3

Freeman v. United States,
    564 U.S. 522 (2011).........................................10

4

United States v. Armstrong,
    620 F.3d 1172 (9th Cir. 2010)..............................5, 6

5

6

United States v. Castro-Ponce,
    770 F.3d 819 (9th Cir. 2014)................................5

7

United States v. Taylor,
    749 F.3d 842 (9th Cir. 2014)................................8

8

9

United States v. Wetchie,
    207 F.3d 632 (9th Cir. 2000)..............................3, 4

10

**FEDERAL STATUTES**

11

18 U.S.C. § 2244.........................................2, 13

12

18 U.S.C. § 3013............................................14

13

18 U.S.C. § 3014....................................1, 10, 14

14

18 U.S.C. § 3553.......................................10, 12

15

18 U.S.C. § 3571............................................10

16

18 U.S.C. § 3583.......................................12, 13

17

18 U.S.C. § 3663A...........................................14

18

34 U.S.C. §§ 20911-32..................................10, 13

19

49 U.S.C. § 46506(1)........................................2

20

**OTHER AUTHORITIES**

21

C.D. Cal. Second Amended General Order 20-04................12

22

U.S.S.G. § 2A3.4............................................2

23

U.S.S.G. § 3A1.1.........................................3, 9

24

U.S.S.G. § 3C1.1...................................5, 7, 8, 11

25

U.S.S.G. § 4C1.1............................................9

26

U.S.S.G. § 5D1.2...........................................10

27

U.S.S.G. § 5E1.2.......................................10, 13, 14

28

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.   INTRODUCTION

3      Defendant Mohammad Jawad Ansari stands convicted of abusive
4  sexual contact after a jury found that he knowingly and intentionally
5  groped R.S. as she slept next to him on a flight.  Defendant groped
6  R.S., a total stranger, for up to an hour, knowing that she had never
7  even spoken with him, let alone consented to his advances, and that
8  she could not defend herself because she was asleep.  Defendant only
9  stopped groping R.S. when she woke up and saw defendant's hand buried
10 between her legs, and sprang out of her seat, at which point he faked
11 being asleep for the rest of the flight.  Defendant later lied to the
12 FBI agents who investigated this case, lied to the Court in a sworn
13 declaration, and lied to the jury while testifying under oath.

14     Defendant's outrageous and sexually predatory conduct warrants a
15 substantial punishment.  He faces a guidelines range of 21 to 24
16 months' imprisonment, with a statutory maximum sentence of 24 months'
17 imprisonment, based on a total offense level of 16 and a criminal
18 history category of I.  If not for the 24-month statutory maximum,
19 the applicable Guidelines range would be 21 to 27 months.  For the
20 reasons explained below, defendant should be sentenced to 24 months'
21 imprisonment, one year of supervised release, a fine of $52,500, a
22 $100 special assessment, a $5,000 additional special assessment
23 pursuant to 18 U.S.C. § 3014, restitution of $1,600, and must be
24 required to register as a sex offender.

25

## II.  STATEMENT OF FACTS

26     As established at trial, on February 17, 2020, victim R.S.
27 boarded a Monday morning United Airlines flight from Cleveland to Los
28 Angeles.  As an American Airlines flight attendant, she was commuting

to Los Angeles to work an international flight from Los Angeles to Japan later that day.  With a long day ahead, she took her assigned middle seat and fell asleep.  Next to her, in the window seat, sat defendant.  The two strangers did not interact before R.S. fell asleep.

As R.S. slept, defendant saw the opportunity to grope her, and took it.  Over the course of 40 minutes to an hour, defendant crept his hand up R.S.'s right leg until it was under the hem of her skirt, wedged between her closed legs, mere inches from her vagina.  He later told the FBI, that "it," referring to his groping of R.S., "felt good."  Defendant only stopped groping R.S. when she woke up, realized what defendant was doing, and screamed "Dude!" at him.  In response, defendant rolled towards the window, and pretended to be asleep for the remainder of the flight.  Afraid and in shock, R.S. rushed out of her seat and headed to the back of the plane, where she stayed for the remainder of the flight.

For groping R.S., defendant was charged with abusive sexual contact aboard an aircraft, in violation of 18 U.S.C. § 2244(b), 49 U.S.C. § 46506(1).  (Dkt. 1.)  On May 9, 2023, a jury found defendant guilty.  (Dkt. 159.)

## III.   SENTENCING GUIDELINES

### A.   Defendant's Total Offense Level Is 16

The government concurs with the Probation Office that the base offense level is 12 under U.S.S.G. § 2A3.4(a)(3).  (PSR ¶ 21.)  For the reasons explained below, the total offense level is 16, accounting for a two-level increase under the vulnerable victim adjustment and a further two-level increase for obstruction of justice.  Further, defendant does not qualify for a deduction under

2

the pending zero-point offender guideline amendment.  The government agrees with the Probation Office that defendant is not entitled to any reduction for acceptance of responsibility.  (Id. at ¶ 33.)

### 1.   A two-level increase applies under the vulnerable victim adjustment

The Probation Office correctly calculated a two-level adjustment because defendant "knew or should have known that [the] victim of the offense was a vulnerable victim[.]"  U.S.S.G. § 3A1.1(b)(1); (PSR ¶¶ 23-27.)  A "vulnerable victim" is a person "who is unusually vulnerable due to age, physical or mental condition, or who is otherwise particularly susceptible to the criminal conduct." U.S.S.G. § 3A1.1(b)(1) cmt. 2.

In United States v. Wetchie, 207 F.3d 632, 633 (9th Cir. 2000), the defendant appealed the trial court's imposition of the vulnerable victim adjustment following his conviction for abusive sexual contact where he, an adult guardian, fondled an eleven-year-old girl as she slept.  The defendant argued that the trial court erred in applying the adjustment "based solely on the fact that the [victim] was sleeping at the time of the offense."  Id.

The Ninth Circuit affirmed the trial court's imposition of the adjustment and held that a sleeping victim was "unusually vulnerable" under U.S.S.G. § 3A1.1(b)(1) for two reasons: "due to her 'physical condition' or 'otherwise particularly susceptible to [the defendant's] criminal conduct.'"  Id. at 634.  It explained that "the victim's being asleep diminished her ability to resist the Defendant or cry out, rendering her essentially unable under any circumstances to resist his physical advance, unable to express any objection, unable to cry out, unable to do really anything until after the act

3

1   was already underway or completed." Id.  It further explained that

2   the fact that the victim was asleep "may well have encouraged [the

3   defendant's] act; if [the defendant's] victim had been awake, it is

4   quite possible (and perhaps even likely) that he would not have

5   committed this offense." Id.

6       Wetchie controls here.  As in Wetchie, R.S. was unusually

7   vulnerable because she was asleep when defendant sexually abused her.

8   The fact that R.S. was asleep left her unable to resist defendant's

9   abusive sexual advances and allowed defendant to sexually abuse her

10  for 40 minutes to an hour.  That she would have stopped defendant's

11  groping had she been awake is evinced by R.S.'s reaction after she

12  woke up; she immediately pushed defendant's hand away, screamed at

13  him, and rushed out of her seat.  And as in Wetchie, it is likely

14  that R.S.'s physical condition of being asleep encouraged defendant

15  to sexually abuse her.  Had R.S. been awake and in a position to

16  defend herself from defendant's groping, defendant may well not have

17  committed the offense.

18      Defendant's attempt to sidestep Wetchie's clear holding is

19  frivolous.  Wetchie held that "[a]djusting a defendant's sentence

20  upward based on the fact that the victim was sleeping when the crime

21  was committed is permissible under the Guidelines." Id. at 636.

22  Indeed, the trial court in Wetchie applied the adjustment "based

23  solely on the fact that [the victim] was sleeping at the time of the

24  offense." Id. at 633 (emphasis added).  The victim's age, and the

25  defendant's supervision of the victim were not "considered for

26  purposes of applying the vulnerable victim adjustment" as those were

27  "taken into account through other adjustments." Id. at 634 n.3.

28  Defendant argues that the vulnerable victim adjustment does not apply

                                    4

because R.S. was a healthy adult who worked as a flight attendant.[1] (Dkt. 179 at 2.)   Defendant is wrong -- the adjustment applies because at the time defendant sexually abused R.S., she was asleep and unusually vulnerable to defendant's predation, not because of her age or occupation.

Accordingly, the Court should impose a two-level increase under the vulnerable victim adjustment.

### 2. A two-level increase applies for obstruction of justice

A two-level obstruction of justice adjustment applies under U.S.S.G. § 3C1.1 because defendant committed perjury at trial and in connection with pretrial proceedings.

While a defendant has a right to testify and deny guilt, "[i]f false testimony is material to and significantly impedes the administration of justice with respect to prosecution or sentencing, it is more than mere denial of guilt." United States v. Armstrong, 620 F.3d 1172, 1177 (9th Cir. 2010).   Simply stated, "there is no constitutional right to lie." Id. (internal citation omitted).   "For perjury to be deemed obstruction, the district court must find that: '(1) the defendant gave false testimony, (2) on a material matter, (3) with willful intent." United States v. Castro-Ponce, 770 F.3d 819, 822 (9th Cir. 2014).   The government must show that the

---

[1] Defendant claims that far from being a vulnerable victim, as a flight attendant, R.S. occupied "a position of power and authority" on the flight.   (See Dkt. 179 at 2.)   The fact that defendant groped R.S. despite her alleged high status as a flight attendant demonstrates that her status was meaningless to him.   Additionally, on this flight, R.S. was merely a passenger (who happened to be a flight attendant) on a competitor airline.

5

1   defendant committed perjury by a preponderance of the evidence.

2   Armstrong, 602 F.3d at 1176.

3                   *a.   Defendant committed perjury on the stand*

4       Defendant committed perjury when he testified that he was asleep

5   when he groped R.S.  This testimony was false, material, and given

6   with willful intent.

7       Armstrong is instructive.  In Armstrong, the Ninth Circuit

8   upheld the trial court's imposition of an obstruction of justice

9   adjustment for perjury where the trial court found that the defendant

10   lied as to a material issue during his trial testimony.  The

11   defendant was on trial for two counts arising from a racially

12   motivated beating of an African American man.  Armstrong, 620 F.3d at

13   1175.  The defendant took the stand and denied hurling racial slurs

14   at the victim and attacking the victim on account of his race.  Id.

15   The defendant's testimony contradicted prior recorded statements he

16   had made to law enforcement and the testimony of several trial

17   witnesses.  In finding that the defendant had perjured himself, the

18   trial court cited the record, the jury's guilty verdict, and the fact

19   that based on the evidence, defendant's testimony was "just not

20   logical."  Id. at 1177 n. 3; 1178.  The Ninth Circuit affirmed the

21   trial court's imposition of the adjustment, holding that "[w]hile a

22   defendant has a right to put the government to its proof . . . there

23   is no constitutional right to lie."  Id. at 1177 (internal quotation

24   marks omitted).

25       Here, defendant perjured himself when he testified that he was

26   asleep when he groped R.S.  That defendant testified falsely is clear

27   from the jury's guilty verdict finding beyond a reasonable doubt that

28   he knowingly and intentionally groped R.S., from his interview with

the FBI where he confessed to groping R.S.,[2] from witness testimony including R.S., aisle passenger Richard Rice, and two flight attendants, all of whom testified that defendant was not asleep. And, like in Armstrong, defendant's testimony is simply "not logical."  His contention that he was asleep during the entire 40 minutes to an hour that he was touching R.S., moving his hand towards her genitals until it was wedged between her closed legs, inches from her vagina, strains credulity.  Indeed, the Court has put it best: "[t]he court finds that the defendant's testimony included falsehoods obvious to the court concerning his intent and knowledge.  The content and nature of that testimony left the court convinced of the defendant's willingness to engage in deceitful conduct in any circumstance in which he perceives such conduct will be to his own advantage."  (Dkt. 177 at 4.)

Defendant's lie was material.  The trial centered on whether defendant knowingly and intentionally groped R.S.  Defendant's testimony that he was asleep, and therefore did not have the requisite intent, was evidence that "if believed, would tend to influence or affect the issue under determination."  U.S.S.G. § 3C1.1 cmt. 6.  Defendant's false testimony was willful, he did not testify that he was asleep based on confusion or mistake, but rather from "a willful attempt to obstruct justice."  Id. cmt. 2.  Indeed, the primary argument defense counsel presented in closing was that defendant was asleep.

---

[2] While defendant initially told agents he was asleep from takeoff to landing, he eventually confessed to groping R.S.  The Court ruled in defendant's first motion to suppress that the confession was not coercive (Dkt. 61), and the confession was introduced at trial and supported the jury's guilty verdict.

1    The government therefore asks that the Court find that

2    (1) defendant gave false testimony; (2) on a material matter; and

3    (3) with willful intent and apply a two-level obstruction of justice

4    adjustment.

5              b.   *Defendant perjured himself in pretrial*
                    *proceedings*

6

7    U.S.S.G. § 3C1.1 "is not limited to the adjudication on the

8    merits of the underlying criminal charges; it also encompasses

9    certain proceedings and procedures collateral to that adjudication."

10   United States v. Taylor, 749 F.3d 842, 846 (9th Cir. 2014).

11   In addition to perjuring himself on the stand, defendant also

12   committed perjury in connection with his motion to suppress

13   statements obtained in violation of the Fifth Amendment.  (Dkt. 129.)

14   In support of that motion, defendant filed a sworn declaration in

15   which he stated: "On February 17, 2020, I was on a flight from

16   Cleveland to Los Angeles.  When the plane landed, uniformed police

17   officers entered the cabin and told me to come with them."  (Ansari

18   Declaration ¶ 2, Dkt. 129-3.)  Based on that declaration, defendant

19   argued in his motion that "Mr. Ansari was physically removed from an

20   airplane by police officers[.]"  (Dkt. 129 at 3.)

21   Defendant's sworn statement was false.  Consistent with the

22   testimony of flight attendant Reneshia Rivers, defendant testified on

23   the stand that law enforcement never entered the cabin and that

24   flight personnel escorted him off the flight.  His sworn statement

25   made in support of his motion to suppress was material because it was

26   a fact that tended to influence the issue under determination, i.e.,

27   whether the Court would grant defendant's motion.  The statement that

28   "uniformed police officers entered the cabin and told me to come with

1  them," and that he was "physically removed" from the plane, painted a

2  picture of overzealous law enforcement running roughshod over his

3  rights.  Further, defendant made the statement willfully, as he swore

4  that "[t]he foregoing is true and correct to the best of my knowledge

5  and belief." (Dkt. 129-3 (Ansari Declaration) at 2.)  Defendant's

6  perjury in connection with his declaration is therefore a separate

7  ground for the application of the obstruction of justice adjustment.[3]

8          3.   The zero-point offender provision does not apply.

9      Defendant seeks a two-level reduction under proposed U.S.S.G.

10 § 4C1.1 for being a zero-point offender.[4]  Defendant is ineligible

11 for a reduction under this proposed guideline.  To qualify, a

12 defendant cannot receive a vulnerable victim adjustment under

13 U.S.S.G. § 3A1.1.  Proposed U.S.S.G. § 4C1.1(a)(9) ("the defendant

14 did not receive an adjustment under §3A1.1 (Hate Crime Motivation or

15 Vulnerable Victim")).  As explained in detail above, the vulnerable

16 victim adjustment plainly applies.  Accordingly, defendant is

17 ineligible for a reduction under U.S.S.G. § 4C1.1.

18     **B.   The Applicable Guidelines**

19     With a total offense level of 16 and a criminal history category

20 of I, the Guidelines range would ordinarily be 21 to 27 months.

21

22

---

23     [3] Defendant's deceitfulness and lack and candor with the Court
was not limited to his motion to suppress.  After attempting to
24 tarnish the victim as an anti-Muslim bigot in pretrial filings, (see
e.g. Dkt. 112 at 1 ("The undisputed facts of this case are that a
25 dark-skinned Muslim man from Pakistan named Mohammad was accused by a
white woman of sexually assaulting her")), defendant belatedly
26 revealed his conversion to Judaism in connection with his motion for
bond pending sentencing.  (See Dkt. 171.)

27     [4] See https://www.ussc.gov/sites/default/files/pdf/amendment-
process/reader-friendly-amendments/202305_RF.pdf (last accessed Sept.
28 13, 2023).

9

Defendant faces a statutory maximum sentence of two years, making the applicable Guidelines range 21 to 24 months.  (See PSR ¶ 101.)

Defendant's offense is a Class E felony, which carries a maximum term of supervised release of one year.  (Id. at ¶ 104.)  If supervision is imposed, it must be for a one-year period, U.S.S.G. § 5D1.2(a)(3).  (Id. at ¶ 105).  And as detailed below, defendant must register as a sex offender under the Sex Offender Registration and Notification Act, 34 U.S.C. §§ 20911-32.

Having been convicted of a felony, defendant faces a maximum fine of $250,000.  18 U.S.C. § 3571(b)(3).  Based on an offense level of 16, the range for the applicable fine is $10,000 to $95,000. U.S.S.G. § 5E1.2(c)(3).  Restitution to R.S. is mandatory.  (PSR at ¶ 112.)  R.S. suffered lost wages of $1,600 because she was unable to work the Los Angeles to Japan flight as a result of defendant's crime.  (Id. at ¶ 9.)  Defendant is subject to a mandatory special assessment of $100 and an additional $5,000 assessment under 18 U.S.C. § 3014.  (Id. at ¶ 109.)

## IV.   DEFENDANT'S SENTENCE

### A.   Defendant Should Be Sentenced To 24 Months' Imprisonment

A court must impose "'a sentence sufficient, but not greater than necessary, to comply with' the purposes of federal sentencing, in light of the Guidelines and other § 3553(a) factors."  Freeman v. United States, 564 U.S. 522, 529 (2011).  The 3553(a) factors weigh in favor of a 24-month sentence.

1.   Defendant's sexually predatory offense and personal characteristics are aggravating

The nature and circumstances of the offense and defendant's personal characteristics weigh in favor of a 24-month sentence.  See

18 U.S.C. § 3553(a)(1).  Defendant preyed on a female airline passenger who was unable to defend herself because she was asleep. He groped R.S. knowing that she was a total stranger who had given him no indication of sexual interest.  She never spoke a word to defendant and did not even know his name.  His groping was not a momentary lapse of judgement; rather, he proceeded deliberately from R.S.'s knee towards her vagina over the course of 40 minutes to an hour.  Defendant had more than enough time to reconsider his actions; instead, he chose to continue groping a sleeping stranger.  And he did not stop of his own volition; he only removed his hand from R.S. when R.S. awoke and rushed out of her seat.

And while defendant has no prior criminal history, his personal characteristics reflect a defendant who has failed to take any responsibility for his conduct.  To this day, defendant has never acknowledged groping R.S.'s inner thigh, stating only that he touched her leg.  Defendant has also repeatedly lied throughout this prosecution.  He lied to the FBI agents immediately after the flight, claiming, among other things, that he was asleep from takeoff to landing, that he was "struggling financially," and that he thought R.S. liked him.  His numerous lies to the agents merit "a greater sentencing within . . . the applicable guidelines range."  U.S.S.G. § 3C1.1 cmt. 5(B).  And, as explained above, he has obstructed justice by lying to the Court and the jury.  While these factors are considered in determining the applicable Guidelines range, they certainly do not warrant a low-end sentence.  Given that 24 months would constitute the middle of the Guidelines range were it not for the 24-month statutory maximum, here the Court should impose a 24-month sentence.

2.   Defendant's offense was serious and warrants a substantial sanction

Defendant committed a serious offense that caused immediate and long-lasting harm to R.S.  In the immediate aftermath, defendant's groping left R.S. shocked and afraid and witnesses testified that she sobbed for the remainder of the flight.  She was so distraught that she was unable to work her scheduled flight from Los Angeles to Japan.  R.S.'s victim impact statement details how defendant's abuse continues to affect her to this day.  As a flight attendant, R.S. commutes to work via plane but now struggles to fall asleep because she is constantly concerned about "what if someone touches me." (Diaz Declaration, Ex. A.)

A term of 24 months' imprisonment reflects the seriousness of sexually preying on a sleeping woman aboard a flight and affords adequate deterrence to others who would commit sexual abuse on planes.  See 18 U.S.C. § 3553(a)(2)(A), (B).  Commercial flights should not be crime scenes.  Passengers should not have to be on high alert against potential sexual predators when sleeping during a flight.  A term of two years' imprisonment sends a clear signal that such conduct is unacceptable.

**B.   Supervised Release**

The government also recommends the Court impose a one-year term of supervised release, in light of the factors identified at 18 U.S.C. § 3583(c).[5]  (See PSR ¶¶ 104-105.)  One year of supervised release is appropriate given the nature and circumstances of the

---

[5] The government recommends that the Court, at sentencing, incorporate by reference and impose the standard conditions of supervised release enumerated in Second Amended General Order 20-04.

offense.  <u>See</u> 18 U.S.C. § 3583(c); 18 U.S.C. § 3553(a)(1).

Furthermore, a one-year supervised release term will provide the

needed additional incentive for defendant to refrain from committing

future crimes and will protect the public from further crimes by

defendant.  <u>See</u> 18 U.S.C. § 3583(c); 18 U.S.C. § 3553(a)(2)(B), (C).

As a condition of his supervised release, defendant should

register as a sex offender under the Sex Offender Registration and

Notification Act, 34 U.S.C. §§ 20911-32.  <u>See</u> 18 U.S.C. § 3583(d)

("The court shall order, as an explicit condition of supervised

release for a person required to register under the Sex Offender

Registration and Notification Act, that the person comply with the

requirements of that Act.")  Defendant is convicted of abusive sexual

contact pursuant to Title 18 U.S.C. § 2244(b) from Chapter 109A

(Sexual Abuse).  Title 34 United States Code § 20911(5)(A)(iii)

defines "sex offense" as including "a Federal offense . . . under

. . . chapter 109A . . . of Title 18[.]"  Accordingly, defendant is a

"sex offender" because he was "convicted of a sex offense" and he

"shall register" as such.  <u>See</u> 34 U.S.C. §§ 20911(1); 20913(a).

Defendant should keep the registration current, in each

jurisdiction where he resides, where he is an employee, and where he

is a student, to the extent the registration procedures have been

established in each jurisdiction.  <u>See</u> 34 U.S.C. § 20913(a).  When

registering for the first time, defendant should also register in the

jurisdiction in which the conviction occurred if different from his

jurisdiction of residence.  <u>Id</u>.  Defendant should register before

completing his sentence of imprisonment.  <u>See</u> 34 U.S.C. §§ 20913(b).

1  **C.   Fine**

2  Based on an offense level of 16, the applicable fine guidelines

3  range is $10,000 to $95,000.  <u>See</u> U.S.S.G. § 5E1.2(c)(3).  Except

4  where a defendant shows that he is unable to pay, a court "shall

5  impose a fine in all cases."  U.S.S.G. § 5E1.2(a).  As detailed in

6  the Presentence Report, defendant has ample assets to pay a fine.

7  (<u>See</u> ¶¶ 81-98.)  In assessing a fine, courts assess, among other

8  factors, the severity of the offense, a defendant's ability to pay,

9  and costs for incarceration and supervised release.  <u>See</u> U.S.S.G.

10 § 5E1.2(d).  Based on these factors, the government respectfully

11 requests a mid-range guidelines fine of $52,500.

12  **D.   Special Assessments and Restitution**

13  A $100 special assessment is mandatory pursuant to 18 U.S.C.

14 § 3013(a)(2)(A) because defendant is an individual convicted of a

15 felony.  (PSR ¶ 109.)  Moreover, defendant is subject to an

16 additional special assessment of $5,000 because he is convicted of

17 abusive sexual contact under Title 18 United States Code § 2244(b)

18 from Chapter 109A (Sexual Abuse).  <u>See</u> 18 U.S.C. § 3014(a)(2).  As

19 detailed in the PSR, defendant is clearly a non-indigent person and

20 subject to that statute.  (PSR ¶¶ 79-100, 109.)

21  Additionally, defendant should pay the victim $1,600 in

22 restitution to account for her lost wages due to his offense.  <u>See</u> 18

23 U.S.C. § 3663A.  Because of defendant's abusive sexual contact, R.S.

24 was unable to work on her scheduled flight from Los Angeles to Tokyo

25 on the day of the offense conduct.  (PSR ¶ 9.)

26

27

28

14

**V.    CONCLUSION**

For the reasons set forth above, the government recommends that the Court sentence defendant to: (1) 24 months' imprisonment; (2) one year of supervised release; (3) a fine of $52,500; (4) a $100 mandatory special assessment; (5) a $5,000 additional special assessment pursuant to 18 U.S.C. § 3014; (6) a payment of $1,600 in restitution; and (7) and require defendant to register as a sex offender.

## DECLARATION OF SAMUEL J. DIAZ

I, Samuel J. Diaz, declare as follows:

1.   I am an Assistant United States Attorney ("AUSA") with the United States Attorney's Office for the Central District of California and represent the government in <u>United States v. Mohammad Jawad Ansari</u>, CR No. 20-00449-FLA.  I have knowledge of the facts set forth herein and could and would testify to those facts fully and truthfully if called and sworn as a witness.

2.   Attached hereto as **Exhibit A**, is a true and correct copy of an email containing the Victim Impact Statement of R.S.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration is executed at Los Angeles, California, on September 15, 2023.

_____/s/_____

SAMUEL J. DIAZ

Exhibit A



**From:** R███ S███ ███████████
**Sent:** Wednesday, September 13, 2023 8:51:58 AM
**To:** Richau, William (LA) (FBI) ████████@fbi.gov>
**Subject:** [EXTERNAL EMAIL] - R███ S███

On the day of the incident I was traveling in full flight attendant uniform. In today's world of travel it is a concern for me how the general public has become very physically aggressive with crew members.

I work all international trips and I commute to work by plane.  My work flights are 10-16 hrs long, So when I land in my base and commute by plane mostly in uniform,to go home. I'm extremely fatigued. Which means I need to be able to rest on my flight home so I can get in my car and safely drive home.

I struggle now to be able to relax enough to fall asleep. It always sits in the back of my mind " what if someone touches me" this impacts my quality of life because I'm not getting a restful commute home.

Thank you, R███ S███

Sent from Yahoo Mail for iPhone